# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES A. NEWSON,

       Plaintiff,

    v.                              **Case No. 06-C-913**

MATTHEW J. FRANK, WILLIAM POLLARD,
P. ERICKSEN, JODENE PERTTU,
CAPTAIN ROGERS, LT. LAMBRECHT,
LT. SWIEKATOWSKI, SGT. REIMER,
OFFICER TILOT, and LT. LESATZ,

       Defendants,

## <u>DECISION AND ORDER</u>

Plaintiff, James A. Newson, a Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against prison officials. Before me now are plaintiff's motion for summary judgment and defendants' motion for partial summary judgment.

## I. FACTS

Although plaintiff is now housed at the Wisconsin Secure Program Facility, the events leading to this suit occurred while plaintiff was incarcerated at Green Bay Correctional Institution ("GBCI"), a maximum security prison. At that time, defendant Reimer was a correctional officer at GBCI. Plaintiff alleges that on the morning of August 25, 2005, while Reimer distributed breakfast to inmates in their cells, Reimer fondled plaintiff's penis. According to plaintiff, Reimer used his foot to open the food trap on plaintiff's cell. Plaintiff, who was dressed only in briefs and sandals, told Reimer to take his foot off of the trap. At that point, alleges plaintiff, Reimer reached his arm through the food trap and fondled plaintiff. Plaintiff has submitted the affidavit of a fellow inmate, Clarence Davis, who states

that he saw Reimer assault plaintiff. (Newson Aff. ¶ 15 Ex. A [Affidavit of Clarence Davis].) Reimer denies these allegations.

On August 29, 2005, Plaintiff filed a grievance about the sexual assault through GBCI's inmate complaint review system. Plaintiff sent separate complaints to defendant Pollard (the warden of GBCI), defendant Frank (the former Secretary of the Wisconsin Department of Corrections), defendant Ericksen (the GBCI security director), the deputy warden of GBCI (who is not a defendant), and the Brown County district attorney's office (also not a defendant). That same day, defendant Ericksen was making rounds in the prison. While Ericksen was making a routine inspection of plaintiff's cell, plaintiff asked him whether he had received his complaint about Reimer. According to plaintiff, Ericksen then became visibly agitated, pointed his finger at plaintiff, and yelled, "Yes, and if it's determined that you're lying about staff this falls back upon you, and the consequences will be severe. Oh, I'll proceed with an investigation if you so choose, but it'll be at your own risk." (Newson Aff. ¶ 18.) Ericksen then asked plaintiff why he sent complaints to the district attorney and defendant Frank, and added, "What my staff do is the business of GBCI and this matter will be considered [a]n internal prison dilemma left up to my discretion to resolve it as seen fit." (Id.) Ericksen denies plaintiff's version of events, although Ericksen admits that he spoke to plaintiff about the allegations and warned plaintiff that he would be disciplined if it turned out that he was lying about Reimer.

The next day, plaintiff was conversing with other inmates while Ericksen was nearby. Plaintiff states that he was talking in a conversational tone, but according to Ericksen, plaintiff was being loud and disruptive. Plaintiff then disobeyed Ericksen's order to stop yelling. Ericsksen issued a conduct report against plaintiff for disobeying orders and

2

engaging in disruptive conduct. Plaintiff contends that Ericksen issued this report as retaliation for plaintiff's complaint against Reimer. Plaintiff proceeded to file a grievance against Ericksen for this allegedly retaliatory conduct. Defendant Perttu – the Institutional Complaint Examiner ("ICE") at GBCI – investigated plaintiff's complaint about Ericksen's alleged retaliation and dismissed it, concluding that plaintiff's allegations could be handled as part of the conduct report issued by Ericksen. Defendant Pollard reviewed Perttu's disposition of the complaint and affirmed it.

Perttu also investigated plaintiff's inmate complaint about Reimer. However, because plaintiff's allegations about Reimer involved staff misconduct and therefore implicated the staff collective bargaining agreement, Perttu recommended that the complaint be dismissed and that the investigation proceed pursuant to the personnel rules established by the collective bargaining agreement. Under the collective bargaining agreement, the warden's office investigates allegations of staff misconduct. Warden Pollard reviewed Perttu's recommendation and approved it. Pollard then assigned Ericksen to investigate the claim. Ericksen, in turn, assigned the investigation to defendant Lesatz and Dennis Mosher, another GBCI staff member who is not a defendant.

Lesatz and Mosher proceeded to interview plaintiff. During the interview, they ordered plaintiff to refrain from discussing the alleged incident with others. The reason for this order was to prevent plaintiff from compromising the investigation by influencing the testimony of potential witnesses. According to plaintiff, Lesatz and Mosher did not order plaintiff not to discuss the matters "with others," but instead ordered him not to communicate with Clarence Davis, the inmate who allegedly witnessed Reimer's assault. Lesatz and Mosher also reminded plaintiff that if he was lying about Reimer, he would be disciplined,

3

and they invited plaintiff to drop his claim to avoid potential discipline. Plaintiff did not drop the claim. Lesatz and Mosher then conducted their investigation and concluded that plaintiff's allegations were false. Ericksen reviewed the results of Lesatz and Mosher's investigation and affirmed their findings.

During Lesatz and Mosher's investigation, they discovered that plaintiff had communicated with other inmates about the allegations in violation of their order against talking about the allegations with others. Specifically, Lesatz intercepted eight letters that plaintiff sent to other inmates in which plaintiff accused Reimer of sexual assault. Lesatz was able to intercept these letters because at the beginning of the investigation, Ericksen authorized Lesatz to monitor plaintiff's correspondence with other inmates at GBCI. The monitoring did not extend to plaintiff's correspondence with people outside the prison. The reason why Ericksen allowed Lesatz to monitor plaintiff's inmate-to-inmate correspondence was to determine whether plaintiff was trying to influence the testimony of other potential witnesses.

On October 15, 2008, Lesatz issued a conduct report against plaintiff for disobeying the order against communicating with others. The conduct report also charged plaintiff with lying about Reimer. The lying charge stemmed from Wisconsin Department of Corrections Regulation 303.271, which provides as follows:

> **DOC 303.271. Lying about staff.** A inmate who makes a false written or oral statement about a staff member which may affect the integrity, safety or security of the institution or staff, and makes that false statement outside the complaint review system is guilty of an offense.

Lesatz concluded that the letters containing plaintiff's allegations about Reimer that plaintiff sent to other inmates at GBCI, as well as the letters he sent to Pollard, Frank and the Brown

4

County district attorney's office, constituted false statements made outside the complaint review system and therefore warranted punishment. Ericksen reviewed Lesatz's conduct report, approved it, and forwarded the report to the prison's Adjustment Committee, which found plaintiff guilty on both charges. In finding plaintiff guilty of lying, the Committee relied on the eight letters that plaintiff sent to other inmates, since these were statements made outside the inmate complaint review system. The Adjustment Committee did not punish plaintiff for the letters he sent to Pollard, Frank or the district attorney's office.

During the investigation into plaintiff's allegations against Reimer, plaintiff complained that prison staff tampered with his mail in two respects. First, plaintiff contends that he obtained eleven sworn statements from other inmates stating that Reimer had engaged them in inappropriate sexual conversations, but that these statements disappeared after he sent them to the prison library to be photocopied. On October 28, 2005, plaintiff filed a complaint through the inmate complaint review system about the missing photocopies. Defendant Perttu, as the ICE, was assigned to investigate. She interviewed the prison librarian and determined that the library made the photocopies that plaintiff requested and sent them to plaintiff's cell. Perttu then spoke with the officers in plaintiff's cell block, who stated that plaintiff's mail was not being held for any reason. Perttu could not determine what happened to the photocopies and therefore dismissed plaintiff's complaint. Plaintiff contends that it was Perttu who confiscated the photocopies, although he offers no evidence that she did so.[1]

_____

[1]To be sure, plaintiff points to a handwritten note that Perttu wrote to him in which she tells him that security confiscated one letter that he sent to the library for copying because it was not a legal document. The note instructs plaintiff to contact Lesatz about the letter. However, nothing in the record indicates that this letter was one of the eleven sworn

5

Plaintiff's second complaint about his mail is that prison officials delayed his incoming mail from private citizens in September 2005. He alleges that he received various pieces of mail a few days later than he should have. Plaintiff filed two complaints about these delays through the inmate complaint review system. Again, Perttu investigated these claims as the ICE for the prison. She could not find anything that explained the alleged delays and therefore recommended that the complaints be dismissed. Pollard reviewed and approved Perttu's recommendations, and the complaints were dismissed.

A few months later, plaintiff caused some trouble in his cell. On the morning of December 28, 2005, defendant Swiekatowski was on duty when another guard notified him that plaintiff had blocked the window of his cell with his mattress. This guard related that plaintiff was upset that he did not receive a haircut and was threatening to kill himself. Plaintiff states that he was upset because of the way the prison handled his sexual assault claim. In any event, Swiekatowski went to plaintiff's cell and tried to communicate with him, but plaintiff would not respond. Swiekatowski observed that the floor of plaintiff's cell was wet, that plaintiff had propped his mattress in front of his cell door, and that the window on plaintiff's cell door was covered with paper. Swiekatowski ordered plaintiff to come to the door of the cell and place his hands out of the trap for cuffing, but plaintiff refused. After plaintiff refused these orders, Swiekatowski obtained permission from his captain to use incapacitating agents to remove plaintiff from his cell. Swiekatowski also had a GBCI chaplain and psychologist talk to plaintiff in an effort to peaceably remove him from his cell.

_____

statements or otherwise suggests that Perttu confiscated any of plaintiff's mail or photocopies. Presumably, the letter was one of the eight that Lesatz confiscated on the ground that they violated his order against communicating with other inmates about the allegations against Reimer.

6

The psychologist eventually concluded that plaintiff had to be removed from his cell and placed in controlled segregation for his own protection. Thus, Swiekatowski assembled a cell extraction team and used incapacitating gas to successfully remove plaintiff from his cell.

Once Swiekatowski extracted plaintiff, he brought him to a cell in the controlled segregation unit and turned on the cell's shower so that plaintiff could rinse off the incapacitating agents. Swiekatowski gave plaintiff a paper gown to wear – a "seg smock" – which is the standard apparel distributed to inmates housed in controlled segregation. Plaintiff declined medical treatment, and Swiekatowski observed that plaintiff had no obvious injuries. Swiekatowski did not give plaintiff a towel to dry off with because prisoners can use towels to strangulate themselves, and plaintiff had recently threatened to kill himself. Plaintiff alleges that Swiekatowski left plaintiff to freeze in the wet, cold cell. According to Swiekatowski, however, the temperature in segregation unit cells are kept at 73 degrees Fahrenheit. Further, plaintiff never complained that he was cold.

On the afternoon of December 29, 2005, after prison officials determined that plaintiff posed no danger to himself and that he would obey orders, defendant Rogers (a guard in the controlled segregation unit) decided that plaintiff could be returned to his regular cell. Upon arrival at his cell, however, plaintiff complained that the toilet was clogged and that the ventilation system was not working. Plaintiff was then taken back to controlled segregation. Plaintiff states that the controlled segregation cell was still cold, although again he did not complain to the guards about his cell's temperature.

On December 30, defendant Lambrecht (another guard at GBCI) spoke to plaintiff to determine whether he could be returned to a regular cell. However, because plaintiff

spoke in an uncooperative tone, Lambrecht determined that plaintiff would not be released from controlled segregation. Plaintiff contends that the reason Lambrecht extended his stay in controlled segregation was that plaintiff refused to walk back to his regular cell naked. Lambrecht denies that he ordered plaintiff to walk back to his cell naked, and indeed, plaintiff does not state that Lambrecht gave him a direct order to walk back to his cell naked. Instead, it appears that plaintiff inferred that it was Lambrecht's intent to force him to return to his cell naked. (Newson Aff. ¶ 34.) In any event, because of his refusal to cooperate, plaintiff spent another night in controlled segregation, and again he states that the cell was too cold, but again he did not tell his guards that he was not warm enough. Finally, on December 31, 2005, Captain Schultz (not a defendant) decided that plaintiff could be released from controlled segregation and returned to his regular cell.

On January 3, 2006, plaintiff filed a complaint against Lambrecht through the inmate complaint review system, accusing him of inflicting cruel and unusual punishment. Once again, Perttu was assigned to investigate. Perttu investigated and determined that there was no evidence other than plaintiff's accusations to indicate that Lambrecht inflicted cruel and unusual punishment. She recommended that the complaint be dismissed, and Pollard followed this recommendation and dismissed the complaint.

A few days later, on January 8, 2006, defendant Reimer and another correctional officer, defendant Craig Tilot, were on their way to an inmate's cell when they passed plaintiff's cell. As they passed, plaintiff began pounding on his cell wall and yelled to another inmate, "Hey Johnson, that's the fucker that grabbed my dick." (Tilot Aff. Ex. A.) Plaintiff repeated this statement a number of times. Defendant Tilot then issued a conduct report to plaintiff, charging him with lying about staff, disrespect and disruptive conduct, and the

8

prison Adjustment Committee found plaintiff guilty of the charges. Defendant Rogers was one of the officers on the adjustment committee. Plaintiff alleges that Tilot wrote the conduct report as a means of retaliating against plaintiff for filing the sexual assault claim against Reimer.

Additional facts will be stated in the course of this decision.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Id. at 267; see also Celotex Corp., 477 U.S. at 324 (stating that a proper summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an

9

element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. See 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957). Cross motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. See M. Snower & Co. v. United States, 140 F.2d 367 (7th Cir. 1944). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. See 10A Charles Alan Wright et al. § 2720 at 335.

### III.  ANALYSIS

Plaintiff's complaint contains several claims.  First, he brings an Eighth Amendment claim against defendant Reimer for fondling his penis, a related claim that defendants Ericksen and Lesatz retaliated against plaintiff for complaining about the alleged sexual assault, and a claim that defendants Frank, Pollard and Perttu violated the Eighth Amendment by failing to discipline Reimer.  Second, plaintiff brings a First Amendment claim

10

alleging that defendants Perttu, Ericksen, and Lesatz interfered with plaintiff's mail, and a related claim that defendants Frank and Pollard are liable because they did not act on the grievances in which plaintiff complained about this alleged interference.  Third, plaintiff claims that defendant Tilot retaliated against him for filing the grievance involving Reimer's alleged sexual assault, and he claims that defendants Rogers, Ericksen, Pollard, Frank, and Perttu failed to properly punish Tilot for this alleged retaliation.  Finally, plaintiff claims that defendants Swiekatowski and Lambrecht subjected him to unconstitutional conditions of confinement, and that defendants Frank, Pollard, and Perttu are liable because they did not sustain his inmate complaint relating to the alleged cruel and unusual punishment.  Plaintiff also brings a state law claim based on allegations that defendants violated his rights under the First Amendment to the Wisconsin Constitution.  Plaintiff seeks declaratory and injunctive relief.  He also seeks compensatory and punitive damages.

**A.      Sexual Assault Claim**

      **1.      Claim against Reimer**

Claims of sexual harassment or abuse by correctional officers may be the basis for an Eighth Amendment claim.  Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1187 (7th Cir. 1986) (§ 1983 sexual harassment claims sufficiently strong to survive challenge on appeal); see also Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995) ("a prisoner has a remedy for deliberate harassment, on account of sex, by guards of either sex").

Plaintiff states that Reimer fondled his penis.  Reimer denies this allegation.  Therefore, neither party is entitled to summary judgment and this claim must proceed to trial.

11

### 2.    Claims against Perttu, Pollard, and Frank

Plaintiff alleges that defendants Perttu, Pollard and Frank are liable for Reimer's alleged sexual assault because they did not sustain his inmate complaint about the assault. However, § 1983 does not create a cause of action based on vicarious liability, and therefore these defendants must be dismissed unless their conduct directly caused him harm.  Pacelli v. deVito, 972 F.2d 871, 875 (7th Cir. 1992).  An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.  Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994); Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir. 1986).  An official is personally involved if: a) he or she participates directly in the constitutional deprivation, b) acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his or her knowledge and consent.  Rascon, 803 F.2d at 274; Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

Defendants produce uncontradicted evidence showing that defendant Frank had no personal involvement in any of plaintiff's claims.  They also produce uncontradicted evidence that Perttu and Pollard's involvement was limited to reviewing plaintiff's complaint about the alleged assault.   "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."  George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007).  "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not."  Id.  Accordingly, Perttu, Pollard and Frank are entitled to summary

12

judgment insofar as plaintiff alleges that they were involved in Reimer's alleged sexual assault or otherwise liable in connection with it.

**B.    Retaliation Claims Against Ericksen and Lesatz**

A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right may be liable to the prisoner for damages.  <u>Babcock v. White</u>, 102 F.3d 267, 275 (7th Cir. 1996).  Filing grievances in prison is constitutionally-protected activity sufficient to support a retaliation claim.  <u>DeWalt v. Carter</u>, 224 F.3d 607, 618 (7th Cir. 2000); <u>Thomson v. Washington</u>, 362 F.3d 969, 970-71 (7th Cir. 2004).

To prevail on a retaliation claim, a prisoner must prove that his constitutionally-protected conduct was a substantial or motivating factor in a defendant's actions.  <u>Hasan v. United States Dep't of Labor</u>, 400 F.3d 1001, 1005-06 (7th Cir. 2005); <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v.  Doyle</u>, 429 U.S. 274, 287 (1977); <u>Spiegla v. Hull</u>, 371 F.3d 928, 941-42 (7th Cir. 2004).  "A motivating factor is a factor that weighs in the defendant's decision to take the action complained of – in other words, it is a consideration present to his mind that favors, that pushes him toward, the action."  <u>Hasan</u>, 400 F.3d at 1006.  As explained in <u>Hasan</u>, a prisoner can use either the "direct" or "indirect" method to prove a case of retaliation at the summary judgment stage.  400 F.3d at 1004.  Plaintiff has chosen the direct method, and thus I will not discuss the indirect method, which incorporates the methodology explained in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under the direct method, plaintiff's task is to point to enough direct and circumstantial evidence to allow a reasonable jury to conclude that the defendant would not have taken the adverse action but for the presence of a retaliatory motive.  <u>See</u> <u>Sylvester v. SOS Children's Villages Illinois, Inc.</u>, 453 F.3d 900, 902-04 (7th Cir. 2006).

13

Plaintiff alleges that defendants Ericksen and Lesatz filed conduct reports against him in retaliation for the sexual assault allegations he made against Reimer. I discuss each act of alleged retaliation separately.

### 1. Ericksen's August 30, 2005 conduct report

Plaintiff filed his grievance against Reimer on August 29, 2005. That same day, shortly after he was informed of plaintiff's allegation about Reimer, Ericksen was making his rounds in the segregation unit when plaintiff asked Ericksen whether he had received the grievance. According to plaintiff, Ericksen then grew visibly agitated, pointed his finger at plaintiff, and in a nearly-yelling voice stated, "Yes, and if it's determined that you're lying about staff this falls back upon you, and the consequences will be severe. Oh, I'll proceed with an investigation if you so choose, but it'll be at your own risk." (Newson Aff. ¶ 18.) Ericksen then criticized plaintiff for sharing what Ericksen viewed as an internal prison matter with the Brown County district attorney's office.

On August 30, 2005 – the day after plaintiff filed his grievance against Reimer – Erickson issued a conduct report against plaintiff, alleging that plaintiff disobeyed orders and engaged in disruptive conduct. Ericksen states that he issued this report because plaintiff disobeyed an order to keep his voice down in the segregation unit. Plaintiff states that he was talking in a conversational tone, and that Ericksen's claim that he was yelling is false and made in retaliation for his grievance against Reimer.

Ericksen denies that he retaliated against plaintiff and disputes plaintiff's version of these events. However, at the summary judgment stage, I must accept plaintiff's version as true. If a finder of fact likewise accepts plaintiff's version, it could reasonably conclude that Ericksen retaliated against plaintiff for filing the grievance against Reimer. The finder of fact

14

could combine Ericksen's threatening statements to plaintiff with the fact that he issued the conduct report the day after learning about plaintiff's grievance and reasonably conclude that the grievance was a motivating factor for the conduct report. See Spiegla, 371 F.3d at 943 ("'It is settled in this Circuit that, "a plaintiff may establish . . . a causal link between protected expression and adverse action through evidence that the [adverse action] took place on the heels of protected activity."'"). Although Ericksen states that he issued the conduct report only because plaintiff was yelling and disobeyed orders, plaintiff denies that he was, in fact, yelling. Thus, a finder of fact must determine the truth of these matters.

### 2. Lesatz's post-investigation conduct report

Plaintiff argues that the conduct report that Lesatz issued after the prison rejected plaintiff's grievance against Reimer was retaliatory. The first offense in the conduct report resulted from plaintiff's violation of prison investigators' verbal order not to communicate with other inmates about the Reimer incident. The reason for the verbal order was to prevent plaintiff from trying to influence the testimony of other inmates before prison investigators interviewed them. Plaintiff does not dispute that he discussed the incident with other inmates, but alleges that prison officials only forbade him from discussing the matter with inmate Clarence Davis. Plaintiff denies that he communicated with Davis about the incident. Because a finder of fact must resolve whether prison officials ordered plaintiff not to communicate with Davis, or whether the order also extended to other inmates, a trial is needed to determine whether Lesatz's charge was retaliatory. If Lesatz had no reason to believe that plaintiff violated the verbal order, a reasonable jury could conclude that Lesatz's only reason for filing the charge was to retaliate against plaintiff for his complaint against Reimer.

15

The second charge in Lesatz's conduct report against plaintiff was for lying about prison staff. Lesatz made this charge after he concluded his investigation of plaintiff's allegations and decided that plaintiff was lying about Reimer. Lesatz states that he filed it to enforce prison disciplinary rules – namely Wis. Admin. Code § DOC 303.271, which, as noted, prohibits lying about staff in statements made outside of the prison grievance system. Because a statement that violates DOC § 303.271 has to have been made outside of the prison grievance process, plaintiff did not violate § 303.271 simply by filing a grievance that turned out to be false. Plaintiff could have been punished only if prison officials determined that plaintiff repeated his allegations against Reimer outside of the grievance process. Here, plaintiff admits that he did repeat the allegations outside the grievance process – namely, in his letters to fellow inmates – and thus Lesatz had grounds for believing that plaintiff violated § 303.271.

However, prison officials, including Lesatz, repeatedly warned plaintiff while they were investigating his inmate complaint that they would punish him if they determined that his claim lacked merit. As Lesatz states in his affidavit, "the plaintiff was informed [at the outset of the investigation] that he faced the risk of disciplinary action for lying about staff should the investigation establish that he did so." (Lesatz Aff. ¶ 16.) Lesatz also states that his reason for so warning plaintiff was "to allow the plaintiff to recant his allegation prior to a full scale investigation if he was lying." (Id. ¶ 17.) If Lesatz's decision to file the lying charge at the end of the investigation was intended to punish plaintiff for his refusal to accept the invitation to recant, Lesatz is guilty of retaliation. Thus, although Lesatz states that he filed the lying charge against plaintiff because of the statements about Reimer that plaintiff made to other inmates (i.e., outside the inmate complaint review system), rather than because

16

plaintiff did not withdraw his inmate complaint, plaintiff has produced enough evidence of the latter to get to a jury. However, plaintiff is not entitled to summary judgment because a jury could believe Lesatz's testimony that he filed the lying charge only because of the false statements that plaintiff made to other inmates, in violation of DOC § 303.271. If Lesatz was motivated by his desire to enforce prison rules, and his desire to retaliate against plaintiff for his refusal to recant did not tip the scales in favor of discipline, plaintiff's retaliation claim will fail.

Accordingly, plaintiff's claims that Ericksen and Lesatz retaliated against him for filing an inmate complaint must proceed to trial.

**C.     First Amendment Mail Claims**

**1.      Claims against Perttu, Ericksen, and Lesatz**

Prisoners have a limited liberty interest in their mail under the First and Fourteenth Amendments. Procunier v. Martinez, 416 U.S. 396, 413-14 (1974), overruled on other grounds by, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The inspection of personal mail for contraband is a legitimate prison practice, justified by the important governmental interest in prison security. Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986). Further interference with an inmate's personal mail must be reasonably related to legitimate prison interests in security and order. Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Supreme Court identified the following four factors as helpful in determining whether a prison regulation abridging First Amendment rights is reasonably related to a legitimate prison interest: 1) a "valid, rational connection" between the regulation and a legitimate, neutral government interest; 2) the existence of alternative methods for the inmate to

17

exercise his constitutional right; 3) the effect the inmate's assertion of that right will have on the operation of the prison; and 4) the absence of an alternative method to satisfy the government's legitimate interest. Id. at 89-90.

Plaintiff's claims concerning his mail fall into two categories. First, plaintiff states that much of his incoming mail was delayed during the fall of 2005, although he has no evidence that any of the named defendants were responsible for any delay. Because plaintiff has no evidence that any of the named defendants were responsible for any delays, defendants are entitled to summary judgment on this claim.

Second, plaintiff claims that prison officials confiscated eleven sworn statements from other inmates concerning his claims against Reimer. Plaintiff sent the statements to the prison library for copying, and prison records show that they were copied and returned to plaintiff. Plaintiff contends that he never received the photocopies. He filed a grievance with the prison, and defendant Perttu investigated. Perttu could find no evidence that anyone at the prison confiscated the copies and therefore dismissed the grievance. Plaintiff speculates that Perttu confiscated the copies, but he produces no evidence in support of his speculation.[2] Because there is no evidence that any of the named defendants confiscated plaintiff's copies, defendants are entitled to summary judgment on his claim concerning them.

Finally, I note that defendants Ericksen and Lesatz admit to monitoring plaintiff's incoming and outgoing correspondence with other inmates. Such mail monitoring was done

---

[2]As previously noted, plaintiff cites a note that Perttu sent him indicating that security confiscated one letter that he wanted copied on the grounds that it was not a legal document. However, this note sheds no light on what happened to the eleven sworn statements.

as part of their investigation into plaintiff's allegations about Reimer, the purpose being to prevent plaintiff from influencing the testimony of potential witnesses. Ericksen and Lesatz state that they did not monitor plaintiff's mail with non-inmates. Plaintiff does not seem to base any of his claims on the monitoring of his inmate-to-inmate correspondence, but to the extent he has, I would grant summary judgment to defendants because such monitoring was justified by the prison's interest in preventing plaintiff from influencing witnesses with respect to his complaint against Reimer.

### 2. Claims against Frank and Pollard

Plaintiff's mail claims against defendants Pollard and Frank fail for the same reason as his other claims against them – namely, he has produced no evidence that Pollard or Frank had any personal involvement in the events giving rise to such claims.

## D. January 2006 Retaliation Claim

### 1. Claim against Tilot

Plaintiff alleges that another correctional officer, defendant Tilot, filed a conduct report against him in retaliation for filing a grievance against Reimer. It is undisputed that Tilot issued plaintiff a conduct report on January 12, 2006 – over four months after plaintiff filed his grievance against Reimer and over three moths after it was resolved. The conduct report charged plaintiff with lying about staff, disrespect and disruptive conduct. According to Tilot, he issued the report after he witnessed plaintiff cause a disruption among inmates in a segregation unit by making inflammatory statements about Reimer, which Tilot believed to be untrue and disrespectful – namely, "that's the fucker that grabbed my dick." Plaintiff offers no evidence other than his own speculation in support of his claim that Tilot filed the

19

conduct report against plaintiff as retaliation for the inmate grievance that plaintiff filed against Reimer four months earlier. Therefore, Tilot is entitled to summary judgment.

### 2. Claims against Rogers, Ericksen, Pollard, Frank, and Perttu

Plaintiff argues that defendants Rogers, Ericksen, Pollard, Frank and Perttu are all liable for Tilot's alleged retaliation, but again he fails to produce any evidence that they personally engaged in retaliatory conduct. Therefore, these defendants are entitled to summary judgment.

### E. Eighth Amendment Conditions of Confinement Claims

### 1. Claims against Swiekatowski and Lambrecht

Plaintiff argues that defendants Swiekatowski and Lambrecht subjected him to cruel and unusual punishment during his confinement in controlled segregation. I note that plaintiff does not complain about Swiekatowski's use of incapacitating agents to extract him from his cell – plaintiff admits that this use of force was justified by his refusal to obey orders. (Newson Aff. ¶ 31.) Rather, plaintiff complains that the conditions of his controlled segregation cell were intolerably cold, and that Swiekatowski and Lambrecht's indifference to his cell's temperature violated the Eighth Amendment.

To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. Delaney v. DeTella,

20

256 F.3d 679, 683 (7th Cir. 2001).  Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it.  <u>Dixon v. Godinez</u>, 114 F.3d 640, 645 (7th Cir. 1997).

Plaintiff contends that the conditions of his confinement in controlled segregation violated his constitutional rights because it was too cold - he was only wearing a paper gown and the ventilation was blowing cold air.  However, he has not presented any evidence that prison officials were deliberately indifferent to his complaints.  Deliberate indifference requires that prison officials have "acted with the equivalent of criminal recklessness." <u>Borello v. Allison</u>, 446 F.3d 742, 747 (7th Cir. 2006).  Defendants' uncontradicted evidence shows that they checked on plaintiff numerous times and that prison staff were not aware of defective ventilation or cold temperatures.  Although plaintiff states that it was cold in his cell, he does not state that he ever told his guards that he was cold.  In short, plaintiff does not point to any evidence that prison officials acted with the "criminal recklessness" necessary for an Eighth Amendment claim.  <u>See</u> <u>id.</u>; <u>King v. Fairman</u>, 997 F.2d 259, 261 (7th Cir. 1993).  Thus, defendants are entitled to summary judgment on this claim.

**2.      Claims against Frank, Pollard, and Perttu**

Once again, plaintiff points to no conduct by Frank, Pollard or Perttu that would render them liable for Swiekatowski or Lambrecht's alleged infliction of cruel and unusual punishment.  These defendants are entitled to summary judgment.

21

**F.     State Law Claims**

Defendants contend that plaintiff may not proceed on his state law claims because he failed to file appropriate notices of claim under state law.  Wisconsin Statute 893.82(3) provides:

> Except as provided in sub. (5m), no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, ... unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

It is undisputed that plaintiff has not filed a Notice of Claim with the attorney general in accordance with Wis. Stat. § 893.82 regarding his state law claims.  "Where the plaintiff has failed to comply with this notice of claim statute, the court lacks jurisdiction to hear the claim."  Williams v. Nelson, 398 F. Supp. 2d 977, 992 (W.D. Wis. 2005) (quoting Saldivar v. Cadena, 622 F. Supp. 949, 959 (W.D. Wis. 1985)).  Thus, I will granted defendants' motion for summary judgment as to plaintiff's state law claims.

**G.     Summary**

In sum, plaintiff's Eighth Amendment sexual assault claim against Reimer and his retaliation claims against Ericksen and Lesatz remain.  All other claims are dismissed. Additionally, defendants Frank, Pollard, Perttu, Rogers, Lambrecht, Swiekatowski, and Tilot are dismissed.

# IV. CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Docket #43) is **DENIED**.

**IT IS FURTHER ORDERED** defendants' motion for partial summary judgment (Docket #50) is **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that defendants' motion for leave to file excess pages (Docket #49) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants Frank, Pollard, Perttu, Rogers, Lambrecht, Swiekatowski, and Tilot are dismissed.

**FINALLY, IT IS ORDERED** that a telephonic status conference to schedule further proceedings will be held on **October 2, 2008** at **2:30 p.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 17 day of September, 2008.

/s_____
LYNN ADELMAN
District Judge

23